Case No. 23-35225

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA, *Plaintiff-Appellee*,

vs.

STEVEN DOUGLAS ROCKETT, *Defendant-Appellant*.

_____

Appeal from the United States District Court
for the District of Oregon, Portland Division
Case No. 3:13-CR-00557-SI

_____

## APPELLANT'S MOTION FOR
## CERTIFICATE OF APPEALABILITY

_____

Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
Phone: (503) 351-2327
Fax: (503) 914-6665
Email: bwnlaw@gmail.com
ATTORNEY FOR DEFENDANT-APPELLANT

**INTRODUCTION**

In this 28 U.S.C. §2255 case, defendant Steven Douglas Rockett challenges his conviction and sentence for production of child pornography, international travel with the intent to engage in sex with a minor, production or attempted production of child pornography, and possession of child pornography in violation of 18 U.S.C. §§2251(a), (c) and (e), 18 U.S.C. §§2423(b), (c) and (e), and 18 U.S.C.§§ 2252A(a)(5)(B) and (b)(2). Defendant did not receive effective assistance of trial counsel, in violation of the Sixth Amendment to the Constitution of the United States. Defendant was also prejudiced by repeated instances of prosecutorial misconduct. These infirmities in defendant's trial and representation prejudiced defendant, leading to his conviction and a lengthy sentence which would have been substantially shorter or absent but for the errors discussed below. Accordingly, defendant's conviction should be vacated and he should be afforded the opportunity to receive a new, fair trial.

**ISSUES PRESENTED FOR REVIEW**

Pursuant to 28 U.S.C. §2253(c), Defendant requests a certificate of appealability on the issues of whether the district court erred in concluding that Defendant received effective assistance of counsel under the Sixth Amendment when counsel failed to object to a number of defects in his indictment and the evidence presented against him at trial, as well as by being the victim of substantial

misconduct at the hands of the government's prosecutors. These errors merit the vacatur of Defendant's conviction and sentence and a remand for retrial.

## FACTUAL BACKGROUND[1]

Defendant, a computer chip designer, was arrested by local investigators on August 23, 2013 following a multi-agency investigation into alleged instances of child sex abuse. The case began when named victim N.S. reported that defendant had raped her. State law enforcement subsequently began to investigate defendant and FBI agents became involved when images on defendant's digital devices suggested that he might have abused children both in America and in the Philippines.

Defendant was initially charged with sexual abuse and child pornography offenses against minor victim N.S. Approximately one week after defendant's arrest on state charges, a federal magistrate judge issued an arrest warrant which alleged a variety of crimes related to the sexual exploitation of children. These included the production and possession of child pornography and engaging in illicit sexual conduct in foreign places.

Defendant elected to proceed to trial on the federal charges against him. At trial, a number of victims testified about defendant's illegal conduct. Several male

---

[1] This fact statement is derived from the government's fact statement in its responsive memorandum below, in opposition to Section 2255 relief, at 1-4 (ECF no. 262 at 8-11).

and female Filipino minor victims testified that defendant had taken photos of them or performed sex acts on them while they showered in defendant's hotel room. Two American minor victims testified that defendant also took photos of them and performed sex acts on them while they showered. One male victim also testified that, while at a movie, defendant put his jacket over his and the victim's laps, then fondled the victim's penis.

Following a jury trial, defendant was convicted of the majority of the offenses alleged in his second superseding indictment. He was sentenced to a federal prison term of 60 years and a lifetime term of supervised release. Defendant has consistently maintained that he is innocent of the charges against him.

## PROCEDURAL HISTORY

On December 16, 2016, a federal grand jury issued a second superseding indictment against defendant, on which he was eventually tried. (ECF No. 58). Defendant's trial began on May 16, 2016 and ended with a jury verdict on May 15, 2016. (ECF No. 136). Defendant was found guilty on the majority of charges against him, including production and attempted production of child pornography outside the United States (Count One), engaging in illicit sexual conduct in foreign places (Count Two), attempted production of child pornography (Counts Four through Eight), and possession of child pornography (Count Nine). *Id.*

On September 8, 2016, defendant was sentenced by United States District Judge Michael J. Simon to a term of 60 years prison, with a lifetime term of supervised release. Some of the counts were made consecutive to a 52 1/2-year state court sentence for related sexual offenses. Defendant timely appealed his conviction and sentence on August 28, 2017. (ECF No. 191). Defendant's conviction and sentence were affirmed by the Ninth Circuit Court of Appeals by memorandum opinion on November 5, 2018. (ECF No. 197).

Defendant timely filed a 28 U.S.C. §2255 motion on November 14, 2019. (ECF No. 202). The court subsequently appointed counsel to represent defendant during his Section 2255 motion, and defendant's former counsel filed an amended motion and exhibits in support on August 8, 2020. (ECF Nos. 221, 235). Defendant prayed for relief on the basis that:

> Defendant's convictions and sentences are void and his incarceration was obtained in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution because of the prosecutorial misconduct that occurred before and during his first trial, which resulted in the guilty verdict.
>
> […]
>
> Defendant's convictions and sentences are void and his incarceration was obtained in violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution at the guilt phase of defendant's trial. For the reasons stated below trial counsel failed to perform at the level of reasonably competent counsel, and had counsel performed competently, it is reasonably

probable that the outcome would have been different had counsel
not failed in the following ways.

The government filed its response brief and exhibits on April 14, 2022.
(ECF No. 262). Defendant filed a reply brief on November 7, 2022. (ECF No.
274).

On March 21, 2023, Judge Michael J. Simon filed an opinion and order
denying defendant relief and also denying a certificate of appealability. (ECF No.
278). Judge Simon concluded that defendant's trial counsel rendered effective
assistance and that no prosecutorial misconduct had occurred. Defendant filed a
notice of appeal on April 3, 2023. (ECF No. 279). This court subsequently
extended the time to file the instant application, on defendant's motion.

## ANALYSIS

A federal prisoner who wishes to challenge their conviction or sentence on
the grounds that "the sentence was imposed in violation of the Constitution or laws
of the United States, or that the court was without jurisdiction to impose such
sentence, or that the sentence was in excess of the maximum authorized by law, or
is otherwise subject to collateral attack," may move the court which imposed the
sentence to vacate or correct the sentence. 28 U.S.C. §2255(a). The Sixth
Amendment to the United States Constitution guarantees in relevant part that a
criminally accused person has the right "to have the Assistance of Counsel for his
defence."

In order for the Court to grant a certificate of appealability in a case such as this, the law requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Defendant argues that he did not receive effective assistance of counsel from his trial counsel or successor attorneys, substantially denying him his Sixth Amendment right to the assistance of counsel. Defendant also argues that prosecutorial misconduct so affected the outcome of his trial as to constitute a denial of his due process rights.

**I. Prosecutorial Misconduct and Procedural Default**

Substantively, a prosecutor's actions constitute misconduct if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)). "Due process protects defendants against the knowing use of any false evidence by the State, whether it be by document, testimony, or any other form of admissible evidence." *Hayes v. Brown,* 399 F.3d 972, 981 (9th Cir. 2005). As to vouching, "[t]he rule that a prosecutor may not express his personal opinion of the defendant's guilt or his belief in the credibility of witness is firmly established." *United States v. McKoy,* 771 F.2d 1207, 1210-1211 (9th Cir. 1985). "Vouching is especially problematic in cases where the credibility of the

6

witnesses is crucial[.]" *United States v. Molina,* 934 F.2d 1440, 1445 (9th Cir. 1991).

Defendant's first set of claims concern instances of prosecutorial misconduct that occurred during his trial. In order to bring a claim under §2255 arising out of the trial record, defendant must generally have first raised that claim on direct review. If defendant did not raise a claim during trial or direct appeal, defendant must demonstrate cause for the failure to raise the claim on direct review and actual prejudice, or alternately that he is actually innocent of the crime. *United States v. Frady*, 456 U.S. 152, 162, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

Due to "the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton,* 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed v. Ross,* 468 U.S. 1, 13, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984)). Still, it is clear that "[t]o show cause for a procedural default, the defendant must establish that 'some objective factor external to the defense' prevented him from raising these claims during trial or on direct appeal." *United States v. Kakkar*, 5:13-cr-00736-EJD-1. N.D. Calif (2022), *quoting Murray v. Carrier,* 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). "If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating `not merely that the errors at...trial created a possibility of

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir.2007) (emphasis in original).

Defendant respectfully submits that at least some of his claims of prosecutorial misconduct are not procedurally defaulted, because at least some of those claims significantly rely at least in part on additional evidence that was not reasonably available to defendant at the time of his trial or direct appeal, and that could not have been reasonably addressed during those proceedings.

## II. Ineffective Assistance of Counsel

### A. Legal Standards

Defendant further complains of ineffective assistance of both trial and appellate counsel. The Sixth Amendment safeguards the right of each criminally accused person "to have the Assistance of Counsel for his defence." It has long been axiomatic that the right to counsel includes the right to counsel's effective assistance. This right extends even beyond trial, such as to the plea negotiation process, or to any other essential stage of criminal representation. *See Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (citing *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

A person seeking to vacate a conviction or sentence under the Sixth Amendment because of ineffective assistance must prove that (1) counsel's assistance fell below an objective standard of reasonableness, giving due deference to the unique facts and circumstances of each case and to the wide variety of acceptable strategic, tactical, and stylistic choices by counsel; and (2) the defendant suffered actual prejudice from counsel's unreasonably deficient assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). There is a strong presumption that counsel rendered effective assistance. *Id.* at 689. To overcome the presumption, a collateral litigant such as a Section 2255 movant must not only show that counsel's performance failed distinctly to comport with governing professional forms but must also show that counsel's bad performance gave rise to a probability of a different result that is significant enough to undermine the court's confidence in the outcome of the original proceedings. *Id.* at 688, 694-695.

In contrast to claims such as prosecutorial misconduct, ineffective assistance of counsel claims are generally inappropriate on direct appeal because they require the development of factual issues not available in the appellate record. *United States v. Ross,* 206 F.3d 896, 900 (9th Cir. 2000). Such claims are properly raised in post-conviction proceedings and are only reviewed on direct appeal: (1) "when the record on appeal is sufficiently developed to permit review and determination

of the issue," or (2) "when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *Id.* (quoting *United States v. Robinson,* 967 F.2d 287, 290 (9th Cir. 1992)). A defendant's failure to raise an ineffective assistance claim on direct appeal does not prevent that claim from being raised on Section 2255 review. *Massaro v. United States*, 538 US 500, 509, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

### B. Failures to Appropriately Confront Prosecutorial Misconduct and False or Misleading Testimony by Government Witnesses

### 1. Trial Counsel's Failures with Regard to Michael Hanada

Defendant argues that his trial counsel was ineffective for failing to adequately object or otherwise respond when prosecution expert witness Michael Hanada provided false testimony regarding defendant's use of the Stealth Encryptor software program. At defendant's trial, Hanada testified that he had found a copy of the Stealth Encryptor program on the desktop of defendant's computer, that the Stealth Encryptor program could be used to effectively hide a digital picture file within another digital file using steganography techniques, and that the version of Stealth Encryptor on defendant's computer had been used an indeterminate number of times. Tr. 919.

During Hanada's testimony about Stealth Encryptor, prosecutors showed a picture of what Hanada testified was the Stealth Encryptor interface screen. This picture incorrectly omitted information which would ordinarily be displayed by the

program showing which files the program had encrypted. Hanada later testified that he was unable to determine whether encryption had been used on any of the files on defendant's computer. Tr. 994.

By presenting an incomplete image of the Stealth Encryptor interface screen and permitting Hanada to testify that he had been unable to determine whether any files on defendant's computer had been encrypted, the government's counsel set the jury up to draw a false inference that there could have been hidden encrypted files on defendant's computer that were effectively invisible to government experts. Instead, if the actual interface screen from defendant's version of the Stealth Encryptor software had been presented to the jury, the software would have clearly identified which files had been encrypted with the program. This directly undercuts Hanada's testimony that he would not have been able to determine whether any encrypted images existed on defendant's computer.

By permitting the juxtaposition of an inaccurate version of the Stealth Encryptor interface page and Hanada's testimony about being unable to tell whether any encrypted images existed on defendant's computer, the prosecution effectively encouraged the jury to make an inference that defendant could have hidden any number of incriminating files on his computer. Instead, in reality, Hanada should have been able to determine exactly which files had been encrypted with the program, as the interface page would have clearly shown the files it had

previously handled. By allowing the jury to draw the inference that defendant had potentially hidden many incriminating files on his computer, prosecutors improperly allowed the jury to conjecture that defendant was guilty of significantly more and substantially worse behavior than was alleged or proved at trial.

Similarly, prosecutors encouraged or at least allowed Hanada to testify that incriminating videos taken in the Philippines were found in allocated or unallocated space on defendant's SD memory card. Tr. 918. Files that were stored in the allocated space of the SD card were available for playback and transfer to other devices. Finding incriminating files in the allocated space of defendant's memory card supported the conclusion that defendant intended to bring those files into the United States, satisfying one of the elements in Count One of defendant's indictment. In contrast, locating those incriminating videos in the unallocated space of defendant's SD card would indicate that defendant had previously deleted the videos, negating the inference that he had intended to bring them into the country.

Prosecutors later acknowledged in their closing argument that the video files found on defendant's SD card had only been located in unallocated space, Tr. 1151, but the prosecution failed to ever correct or even address Hanada's inaccurate statement about finding the Philippines videos on the allocated space of defendant's SD card. This statement allowed the jury to infer that defendant

12

intended to transport the video files into the United States, one of the elements of the production of child pornography charged as Count One of defendant's indictment. Prosecutors knew that the files were found only on unallocated space but did not take affirmative steps to correct the false testimony offered by Hanada, effectively allowing the jury to rely on that false testimony.

Hanada also provided false testimony regarding the seizure of several computers from defendant's home and the incriminating contents of those computers. In defendant's state trial, Hanada testified that he had not personally seized two computers from defendant's home, but Hanada testified at defendant's federal trial that he had participated in the seizure of both computers, that both computers were turned off, and that he was unable to obtain encryption keys for both computers. Tr. 893, 895. This testimony allowed the jury to incorrectly infer that Hanada was more familiar with the location and contents of the computers seized from defendant's home than was actually the case.

Trial counsel failed to adequately prepare to respond, and equally failed to adequately respond, to this false testimony. Even a cursory investigation into the operation of the Stealth Encryptor program would have permitted defendant's counsel to determine that the government's picture of the Stealth Encryptor interface was inaccurate and that the combination of this inaccurate picture and Hanada's misleading testimony permitted the incorrect inference that defendant

was a cryptological mastermind who was able to hide any number of incriminating images within his computer without leaving so much as a trace for government investigators.

Likewise, Hanada's misleading testimony about finding incriminating videos in both allocated and unallocated space in a seized SD card permitted defendant to be convicted on count one of the indictment, even though in actuality the videos had been deleted from that card, and Hanada's testimony about which computers contained contraband data and files caused defendant to appear to have accessed and possessed materials which were actually found on a different computer used by another member of defendant's household.

Defense counsel's failures to object to or rebut Hanada's false testimony actively prejudiced defendant by making him appear to be guilty of additional uncharged offenses and generally creating the incorrect impression that he was able to engage in illegal conduct that was effectively invisible to law enforcement agents and prosecutors.

Hanada also testified at defendant's Federal trial that incriminating evidence against defendant was found on a silver Dell XPS computer which had been found in defendant's living room. Tr. 893, 948-951, 984. That silver Dell computer was offered into evidence by the government and was identified as containing images

of child pornography. During his testimony, however, Hanada repeatedly referred to the silver computer as an X-Blade instead of a Dell XPS.

This is significant because the X-Blade was actually a third, wholly separate computer found in a spare bedroom in defendant's home which was hand-built, and which contained a user profile maintained by another member of defendant's household. Tr. 984, 998-999. By conflating the materials found on the X-Blade computer with the silver Dell XPS computer entered in evidence, the jury was led to believe that materials on the X-Blade computer were actually found on the silver Dell XPS, which formed the basis for defendant's conviction on several counts of possession of child pornography. Moreover, in order to satisfy the interstate commerce component of the child pornography charges, prosecutors were required to show that the silver Dell XPS had moved in interstate commerce, which they did by reviewing the computer's serial number and elucidating testimony about shipping boxes and materials for the silver XPS computer found in defendant's home. In contrast, the X-Blade computer was hand- built and did not feature a serial number. As a result, prosecutors did not show that the X-Blade computer had traveled in interstate commerce, negating one of the elements required to convict defendant of those offenses.

During the discovery phase of defendant's case, the government provided discovery reports authored by Mr. Hanada stating that unlawful images were only

found on the hand- built X-Blade computer found in defendant's house. These reports thus indicated that no contraband was found on either the silver or black Dell desktop computers seized from defendant's house. Defense counsel should have used these reports as a basis for seeking the exclusion of the silver and black Dell desktop computers as irrelevant evidence against defendant. Instead, at trial, Hanada conflated the evidence he claimed to find on the X-Blade computer with materials he found on the silver and black desktops, allowing him to argue that he had indeed found contraband on those two machines even despite his earlier investigative reports to the contrary. This led to confusion for many in the courtroom, including likely the court itself. Tr. 997-1000.

This conflation prejudiced defendant in two major ways: first, because another member of defendant's household also had access to the X-Blade computer in defendant's spare bedroom, defendant could have argued that he did not download or archive the materials found on that computer. Second, because the X-Blade computer was hand-built and the silver and black Dell desktops were mass-produced, the government was able to satisfy its traffic in interstate commerce element by showing that the two Dell desktops had been shipped to defendant from out of state. Because it was hand-built, the prosecution would have had an entirely different and more difficult burden to prove that the X-Blade computer had travelled in interstate commerce. Defense counsel was thus deficient in failing to

16

pursue an objection to the introduction of the silver and black Dell computers and allowing the prosecution to elicit misleading testimony about which of defendant's computers had contained contraband materials.

Defendant's counsel was additionally ineffective in failing to object to Mr. Hanada's testimony regarding the apparent ages of the subjects of various photos allegedly recovered from defendant's computer hard drives. Hanada is not a medical expert and has no evident specialization or training in visually identifying the age of individuals featured in photographs. Nevertheless, defense counsel repeatedly failed to object as Hanada identified photographic subjects as children under the age of 18.

On the one occasion when defense counsel did object to the testimony, they wrongly sought to challenge Hanada's testimony as speculative. Instead, counsel should have challenged Hanada's lack of expert qualifications, within the meaning of the Federal Rules of Evidence, to visually determine whether individuals featured in those photos were underage. *See* Tr. 956. Hanada had no personal knowledge of the people or events depicted in the pictures he testified about, including the ages of the persons depicted in various photos. This testimony was purely speculative and lacked any specific information indicating how and where Hanada developed his conclusions about the ages of the subjects depicted in the

photos. Hanada's age testimony was thus an impermissible lay witness opinion, but the district court still permitted it.

The district court had a particular obligation to exercise caution about Hanada's dual-role testimony both as a case agent expert and a lay witness. Without offering adequate jury instruction regarding such dual-role testimony, the court risks juror confusion about a case agent's testimony. In *United States v. Vera*, 770 F.3d 1232, 1246 (9th Cir. 2014), this court held that "in light of our Circuit's clearly expressed concerns about case agents testifying in both lay and expert capacities, the district court's failure to give an instruction explaining [the case agent's] dual roles was plain error." Even without a defense objection, the district court's decision to permit Hanada's dual role testimony was plainly erroneous.

Counsel's failure to object to Hanada's improper age-related testimony materially prejudiced defendant by reinforcing prosecution claims about underage victims without adequately identifying the purportedly underage victims seen in the photographs or actually confirming their ages. By failing to object to Hanada's testimony, defense counsel allowed the prosecution to introduce completely unsupported testimony about the apparent age of the individuals depicted in defendant's photographs, reinforcing defendant's apparent guilt without requiring any actual factual information about the true age of the individuals shown in Hanada's photographs.

**2. Trial Counsel's Failures with Regard to Alleged Victims**

During defendant's trial, prosecutors elicited testimony from four different witnesses who appeared in videos or photos allegedly taken by defendant during trips to the Philippines on various occasions between 2007 and 2012. Prosecutors knew or should have known that the testimony from these witnesses was incorrect or misleading, but they did not take affirmative steps to correct this testimony after it was offered to the jury. Trial counsel was ineffective in failing to be adequately prepared to challenge, and failing to adequately challenge, this false or misleading testimony.

During his direct examination, witness JDL testified about meeting defendant during defendant's visit to the Philippines in 2007. During that visit, JDL testified that he took a shower in defendant's Park Lane Hotel room along with his cousin and his sister, during which time defendant allegedly touched his genitals and performed oral sex on him. Tr. 270-277. J.D.L. testified that he had only gone to defendant's hotel room on one occasion, which while defendant was staying at the Park Lane Hotel during his 2007 visit. Tr. 270. J.D.L. also testified that the alleged abuse only took place during this 2007 trip and did not happen again. Tr. 270-289.

To support JDL's testimony, the government introduced photos taken from a video that allegedly showed the 2007 incident. Trial Exhibit 5. J.D.L. testified that

the images depicted him and his cousin in the shower and were taken just before defendant sexually assaulted him. These images were not actually taken at the Park Lane Hotel in 2007, though. The prosecution knew or should have known that the video they referenced did not depict J.D.L.'s cousin or sister and was not taken in 2007 as J.D.L. had claimed. Permitting J.D.L. to falsely testify about the date and location of the alleged incident caused prejudice to defendant because it allowed the jury to conclude that the incident happened when and where J.D.L. falsely claimed it did.

In support of his motion for Section 2255 relief, defendant submitted several photographs he took depicting J.D.L. during his 2007 visit. These photographs were taken in 2007 and depict J.D.L. as he appeared at the time of defendant's Philippines visit that year. In addition, Exhibit 101 depicts J.D.L.'s cousin M., who J.D.L. claimed was in the shower during the incident with defendant. Tr. 270-271.

A comparison between these photograph and prosecution Exhibit 5 clearly demonstrates that the individuals depicted in Exhibit 5 look different than J.D.L. and M. did in defendant's 2007 pictures. Exhibit 5 also shows only one person in the shower, contrary to J.D.L.'s testimony that both he and his cousin were showering at the time of defendant's alleged assault. A comparison of the photographs submitted by defendant against the prosecution's trial Exhibit 5 shows

that the person depicted in Exhibit 5 simply cannot be J.D.L. This undermines the whole of J.D.L.'s testimony against defendant.

If J.D.L.'s other testimony that he only went to defendant's hotel room on one occasion in 2007 is to be believed, it is not possible that Exhibit 5 accurately shows J.D.L. on that occasion. Prosecutors should have been able to identify this discrepancy and should have taken steps to prevent J.D.L.'s inaccurate testimony about the alleged 2007 incident from being presented to the jury. Allowing that testimony was obviously prejudicial to defendant by making him appear to be guilty of an offense he could not have committed. Trial counsel was ineffective for failing to challenge this testimony, as pleaded in Claims Two(xi) and Three(v) of defendant's second amended motion.

Because the pictures of J.D.L. were not submitted at defendant's trial, they were outside the trial record and unable to be raised as a claim in defendant's direct appeal. Accordingly, the claim should not be considered to be procedurally defaulted, as asserted by the district court's ruling on defendant's §2255 motion. This newly introduced photographic evidence demonstrates defendant's actual innocence of the crimes alleged against J.D.L. and should permit defendant to overcome procedural default and other bars to habeas review.

The government also called other witnesses who were allegedly sexually abused by defendant during defendant's trips to the Philippines between 2007 and

2012. Prosecutors presented testimony from witnesses G.G. and V.P. that defendant had taken sexually explicit photos of both individuals in defendant's room at the Park Lane Hotel during a 2012 trip. Tr. 206-07, 225-26.

Prosecutors knew or should have known that this testimony was inaccurate, however, as other independent evidence such as defendant's passport and financial records convincingly demonstrated that, while defendant took trips to the Philippines in 2010 and 2013, he did not visit the country in 2012. As a result, it would not have been possible for defendant to take photos of G.G. or V.P. in 2012. Despite having defendant's travel records and financial statements at hand, prosecutors failed to address this inaccurate testimony from the Filipino witnesses. Trial counsel was ineffective for failing to properly confront it and failing to be prepared to do so. This failure resulted in prejudice to defendant because it caused the jury to convict defendant for conduct he did not and could not have committed.

Prosecutors also called defendant's alleged victim N.S. to testify about acts of sexual abuse that she claimed she had suffered at defendant's hands. During her testimony, she identified periods in the Spring of 2009 and the Summer of 2011 as being the occasions when defendant had abused her. Following defendant's federal trial, however, N. S. testified in a civil lawsuit against defendant that she had suffered ongoing abuse from age that had occurred starting when she was five years old and continuing through age twelve. This testimony is so categorically

dissimilar to the limited incidents of abuse that N.S. described during defendant's criminal trial that a reasonable observer could only conclude that she must have been untruthful while giving testimony in at least one of the proceedings against defendant. Either way, N.S.'s testimony should be viewed with suspicion and prosecutors should not have presented it in the manner that they did. Once again, trial counsel was ineffective for failing to be prepared to confront that testimony.

### 3. Trial Counsel's Failures with Regard to Justin Lazenby

Trial counsel further failed to be prepared to respond adequately when the government elicited testimony from forensic technician Justin Lazenby regarding an alleged hidden camera found in the bathroom of defendant's home. The government alleged that this camera was used to capture images of naked children using defendant's bathroom, but defendant maintained that the camera was used to monitor defendant's elderly mother who was at risk for slipping and falling while bathing. Although prosecutors and Lazenby knew that images of defendant's mother had been captured on media retrieved by the Northwest Computer Forensics Laboratory, Lazenby testified that because a single memory card potentially associated with the bathroom camera did not contain images of defendant's mother, that camera had not been used for the purpose of monitoring defendant's mother's safety.

This testimony was misleading, especially given the fact that Lazenby and other forensic technicians had retrieved images of defendant's mother from other media seized from defendant's home. This testimony prejudiced defendant by leading the jury to infer that there was no purpose to the bathroom camera other than to collect inappropriate images of children. Defendant had sought to offer a non-incriminating explanation for the purpose of that device. Lazenby's testimony unfairly undermined this exculpatory purpose. Trial counsel did not confront this misleading testimony in a manner that could have advantaged defendant.

**4. Trial Counsel's Failures with Regard to Prosecutorial Statements**

Defense counsel was also ineffective by failing to object to a number of improper statements made by the prosecutor during opening and closing arguments. These statements included several instances of vouching for government witnesses, referring to facts outside of evidence, and encouraging the jury to make inferences that were not supported by the evidence adduced at trial. Competent defense counsel should have challenged those statements, but defendant's attorneys instead repeatedly failed to take action. These statements prejudiced defendant by inducing the jury to convict defendant on grounds other than the evidence presented against him at trial, violating his Constitutional right to a fair trial.

Prosecutors repeatedly referred to defendant as a "rockstar" and "rich American" who was "walking with impunity." These comments would have had the effect of causing the jury to judge defendant based not on the facts of his case but instead on the emotions raised by painting defendant as a privileged individual taking advantage of economically deprived children in a developing nation. Prosecutors also vouched for government witnesses in closing argument, stating that "no one forced [the government witnesses] to say anything but the truth. And you heard that testimony." Tr. 1202.

Prosecutors further referred to witness Christine Jumoa-As as not being clever and not being a convincing liar, thus offering a personal opinion on the veracity of her testimony. The prosecution additionally called on the jury to be the conscience of the community when convicting defendant. Such statements implied that the jury should rely on emotion when convicting defendant instead of considering only the facts of the case.

The prosecution also offered improper comment on a number of items of evidence in the case. Prosecutors argued that a video showing defendant engaged in a sex act with another individual actually depicted him having sex with a minor victim, Tr. 1152, 1205, even though the government did not introduce any evidence at trial establishing the identity or age of that other individual. The government argued, as well, that the jury should infer that defendant hid

25

incriminating photos in an encrypted hard drive simply because the government could not find evidence of them in other media seized from defendant, Tr. 1205. Defense counsel failed to make an adequate record from which these instances of prosecutorial misconduct could have been challenged on appeal.

### C. Other Failures by Trial Counsel

### 1. Trial Counsel's Failure to Move to Dismiss Count One

Defendant's constitutional rights to due process were violated when defense counsel failed to object to his case proceeding with a legally insufficient and defective indictment. Defense counsel also failed to move to have Count One of the indictment dismissed, resulting in fundamental unfairness to defendant.

Count One of the second superseding indictment is facially overbroad, in that it accuses defendant of producing child pornography at an unspecified place somewhere outside the United States and at an unspecified time between January 23, 2000 and January 29, 2013. This nearly worldwide range of potential sites and extraordinary span of time is not sufficiently cabined to give defendant adequate notice of the potential witnesses and evidence that would be presented against him. The indictment also does not provide any specifics as to defendant's alleged actions in producing or attempting to produce pornography. The indictment also does not name any alleged victims of the offense.

A reasonably competent defense lawyer would have objected to this exceedingly broad scope of places and dates — and to the government's failure to name or otherwise individually identify alleged victims in Counts Two or Three — but defendant's attorney failed to do so. As a result, the government was able to bring in witnesses to testify against whom defendant was not adequately prepared to defend himself.

The indictment for Count One was so overbroad and devoid of any particulars as to the alleged offense that the indictment was legally invalid. A reasonably competent counsel would have moved to have that count of the indictment dismissed on those grounds. Count One of the indictment functionally alleges that, somewhere in the world between the years 2000 and 2013, defendant produced or attempted to produce child pornography using some unnamed minor. The indictment gives no factual allegations other than a broad date range and geographic location covering the entire world. It lacks any statement of the facts and circumstances which would have informed defendant about the specific offense with which he was charged.

This omission left defendant with insufficient knowledge about specific facts alleged in Count One, depriving him of the ability to "prepare a defense and to be able to ensure that Defendant was prosecuted on the basis of facts presented to the grand jury and to be able to […] inform the district court of the facts alleged so that

it can determine the sufficiency of the charge. *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir 1979), *citing Russell v. United States,* 369 U.S. at 763, 768 n. 15, 771, 82 S.Ct. 1038 (1962). "An indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of an indictment." *United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005), *quoting United States v. Du Bo,* 186 F.3d 1177, 1179 (9th Cir. 1999).

Defendant was also prejudiced when, during pre-trial hearings in his case, government counsel stated that it was unknown who would be coming over from the Philippines to testify against defendants. This particularly caused prejudice because these witnesses were brought to the United States from the Philippines, meaning that defense investigators and specialists would have had a particularly difficult time locating them and conducting the kind of routine witness investigation that would ordinarily be performed on alleged victims and potential percipient witnesses.

Competent defense counsel would have attacked the overly broad date ranges and locales featured in Count One of defendant's indictment through a motion to dismiss the count, but defendant was not afforded that opportunity in this instance. They similarly would have attacked the lack of any identifying information about the alleged victims in Counts Two or Three. These errors would

have led to any reasonably competent counsel moving to dismiss these portions of defendant's indictment, and defendant received ineffective assistance of counsel when his attorney failed to challenge these impermissibly broad charges. Defendant's appellate counsel was also ineffective in failing to raise this claim on direct appeal. Both defendant's trial and appellate counsel therefore failed to meet reasonable standards of competence in his defense to these charges.

## 2. Trial Counsel's Failure to Move to Sever Counts One and Nine

Defense counsel failed to seek severance of Counts One and Nine of defendant's indictment, concerning the alleged production of child pornography while outside the United States, from the remaining counts of his indictment, which concern alleged sexual contact with minors. As a result, the jury was able to consider evidence presented in support of other counts against defendant while determining his guilt or innocence on Counts One and Nine. Without this evidence, defendant would not have been convicted on Counts One and Nine, given the lack of evidence supporting defendant's intent to transport child pornography into the United States. This failure prejudiced defendant by leading to his conviction and sentencing on additional counts of the indictment against him, which would not have occurred if those counts had been tried separately.

## 3. Trial Counsel's Failure to Challenge Sufficiency of the Evidence on Count One

Count One of defendant's second superseding indictment charges him with production of child pornography at a location outside the United States. In order to convict defendant of this offense, the government was required to establish defendant's intent to bring the pornographic material into the United States. At defendant's trial, the government introduced evidence showing that pornographic materials were found within the unallocated spaces of defendant's SD cards, but no evidence was presented which established that pornographic materials were found in the allocated space of those drives. This is significant because only files found in allocated space can be actively viewed and retrieved by a user. Again, file data found in a drive's unallocated space has previously been deleted from that drive, indicating an attempt to remove that data from the SD card.

In defendant's case, all the data found in defendant's unallocated space had been actively deleted from defendant's SD cards, supporting an argument that defendant had actively attempted to remove any pornographic materials from the media brought into the United States. Without evidence that defendant intended to bring accessible pornographic materials into the country, the government should not have been able to meet its burden of establishing the intent element of Count One. A competent defense lawyer would have moved for a judgment of acquittal on Count One based on the lack of evidence of intent to transport pornographic materials into the United States, but defendant's counsel failed to appropriately

advocate for this outcome. Defendant was prejudiced by being convicted on Count One when the evidence did not actually establish his guilt.

### 4. Trial Counsel's Failure to Seek Suppression of Encrypted Drives and Encryption Software

Defense counsel was also ineffective in failing to seek the suppression of the encrypted hard drives and testimony about those hard drives and the software used to encrypt them. Because the drives were fully encrypted, the government was not able to break that encryption and identify any of the files contained on those hard drives. Accordingly, the evidentiary value of the hard drives was minimal and consisted of a line of improper conjecture, namely that defendant must be guilty because only a guilty person would seek to protect their data by encrypting it.

This tendentious argument should have been enough to support defense counsel's motion to suppress the hard drives and encryption software, but counsel completely failed to seek its exclusion. Instead, prosecution witness Hanada was able to testify that it was possible that defendant had hidden encrypted data into other images or innocuous files using steganographic encryption techniques, creating an improper inference of defendant's guilt when no actual incriminating evidence was found. Defense counsel should have objected to introducing the encrypted hard drives and software as being more prejudicial than probative but failed to do so, permitting the prosecution to paint defendant's use of encryption as sinister and suggestive that defendant was attempting to hide something.

**5. Trial Counsel's Failure to Object to a Multiplicitous Indictment**

Count One of defendant's indictment recited the elements of defendant's offense as, between the years of 2000 and 2013, in the District of Oregon and elsewhere, defendant produced or attempted to produce child pornography with the intent to bring it into the United States. There were no named alleged victims for Count One. At the end of defendant's trial, the district court arbitrarily named at least four victims of defendant's conduct named in Count One. This was a violation of defendant's fifth and sixth amendment due process rights.

During defendant's trial, various witnesses testified. The district court abused its discretion by making the assumption that some of the witnesses were to be considered victims for Count One of defendant's indictment, even though Count One gave no names or descriptions of the alleged victims. Count One also failed to give any description for the criminal acts allegedly associated with that offense.

The witnesses who testified alleged criminal conduct that happened at different times and different locations, making each alleged act a distinct and separate offense. Crimes are generally considered separate and distinct "if each requires proof of an additional fact that the other does not." *United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2012). In this case, the alleged offenses occurred at different times, at different locations, and with different criminal acts against different alleged victims. Each enumerated act would therefore have been a

separate element of a separate offense. Grouping them all into a single count made the indictment duplicitous.

The district court did not give a specific unanimity instruction which identified each named victim. Accordingly, there is a real possibility that different jurors voted to convict defendant on the basis of differing facts establishing different offenses. The district court abused its discretion by deciding on its own that the jury convicted unanimously as to all witnesses who testified. It is plain error when the district court does not give a specific unanimity instruction in a case like defendant's. *See United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015)

## 6. Actual Innocence - Victims GG, VP, and JDL

Defendant was convicted on Count One of the indictment involving victims GG, VP, and JDL even though defendant had an alibi for the accusations and was actually innocent of committing those crimes. Defendant's right to due process was therefore violated.

During defendant's trial, victims GG and VP testified that defendant took pictures of them while present in a hotel in the Philippines in 2012. Even though either of these individuals were listed in defendant's second superseding indictment, the district court later added them to that indictment as named victims. Defendant was also convicted at trial on Counts One and Two of his indictment relating to offenses against victim JDL.

33

Defendant provided evidence showing that he had not visited the Philippines in 2012, negating the government's claims that he had engaged in illicit conduct on those dates. During defendant's trial, the government had numerous witnesses testify about defendant's passport, travel documents, and financial documents in order to establish details of defendant's travel to and from the Philippines. With the testimony and exhibits they elicited, the government established that defendant was in the Philippines in 2010 and 2013. That same testimony established that defendant was not in the Philippines in 2012. Accordingly, it was physically impossible for defendant to have taken photographs of these victims in 2012.

Importantly, contrary to the district court's ruling, a claim of actual innocence cannot be procedurally defaulted from Federal habeas review. *See McQuiggin v. Perkins*, 133 S.Ct. 1924, 185 L.Ed. 1019 (2013) (plea of actual innocence can overcome habeas statute of limitations), *In re Davis*, 537 U.S. 952, 1305 S. Ct. 1 (2009)(serious constitutional issues arise from barring judicial review of actual innocence claims).

## 7. Defense Attorney's Failure to Investigate

Before and during his trial, defendant repeatedly sought to make his trial counsel aware of substantial exculpatory or mitigating evidence contradicting key pieces of the government's case. Before trial, defendant provided photos of victim J.D.L. taken in 2007, copies of the correct Stealth Encryptor interface screen, and

pictures of the bathroom of the Mango Hotel which showed that videos from the Philippines were actually made in that hotel in 2010. Trial counsel failed to adequately investigate these evidentiary items even after being alerted to their presence.

During trial, defendant informed trial counsel of evidence that would have contradicted government witnesses' testimony, including Mr. Hanada's report concerning the identity and location of the computer where evidentiary photos and videos were found. Defendant also identified other evidence including financial and travel records showing that he was not in the Philippines in 2012 and state trial transcripts showing Mr. Hanada's false testimony regarding the location of recovered computer files. This evidence would have contradicted government witnesses and supported defendant's claim of actual innocence. Trial counsel's failure to investigate substantially prejudiced defendant and constituted inadequate assistance.

## **CONCLUSION**

The District Court denied Defendant's motion in full and denied a certificate of appealability. Opinion and Order. In order for the Court to issue a certificate of appealability, defendant must only make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He need neither make the ultimate showing of bad performance by his counsel nor of prejudice to himself. Defendant

has made at the minimum a substantial showing that he was denied his Sixth Amendment right to effective assistance of counsel under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, the court should grant a certificate of appealability.

For the foregoing reasons, the court should grant a certificate of appealability, order full briefing and argument, vacate defendant's conviction and sentence, provide defendant with a new trial or a new sentencing hearing, and make any other orders beneficial to defendant and in the interest of justice.

RESPECTFULLY SUBMITTED June 29, 2023.

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant-Appellant

## <u>CERTIFICATE OF COMPLIANCE FOR BRIEFS</u>

### 9th Cir. Case No. 23-35225

I am the attorney for defendant-appellant Steven Douglas Rockett. This brief contains 8089 words, including zero words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

DATED June 29, 2023.

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant-Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2023, I electronically filed the foregoing motion for a certificate of appealability with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I also certify that all participants in this case are registered CM/ECF users.

<u>/s/ Bear Wilner-Nugent</u>
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant-Appellant